## MORGAN v PASTOR

Ohio Appeals, 2nd Dist, Montgomery Co
No. 1017.    Decided Feb 3, 1931

M. J. Gilbert, Dayton, for Morgan.
Jacobson & Durst, Dayton, for Pastor.

692

ALLREAD, J.

The evidence does not show that this subdivision is largely improved, but it does appear that sales of lots in said addition have been made and that in the deeds therefor are found the building restrictions. The particular grounds which the defendant urges as a defense against this contract is that while the contract provides that "The Title guaranteed to be clear, free and unincumbered except tax and assessment due and payable after June, 1929," it appears that in the title of the lots there was the following restrictions:

"Said party of the second part for himself, his heirs and assigns forever, by acceptance of this deed, hereby covenants and agrees to observe the following covenants, which shall run with and bind said premises. There shall not be erected or maintained, without the written consent of the party of the first part, on said premises any slaughter house, smith shop, forge, furnace, steam engine, brass foundry, nail, iron or other foundry, any manufactory of gunpowder, glue, varnish, vitrol or turpentine or for the tanning, dressing or preparing of skins, hides or leathers, or for carrying on any noxious, dangerous or offensive trade; all toilet outhouses shall be suitably screened; and equipped with septic or chemical tanks, no part of said premises shall be used for any insane, inebriate or other asylum, or cemetery, or place of burial, or for any structure other than a dwelling, and suitable private garage for the owner and occupants of said dwelling; said premises shall never be leased or sold to Negroes or to any person of African descent. Plans and specifications for all buildings shall be submitted to The Dayton Herald or the Dayton Journal, Subscription Department, for approval."

The defendant was ignorant of these restrictions and incumbrances upon the title. While there is some evidence tending to prove that Pastor must have had knowledge of the restrictions, yet the weight of the evidence is to the effect that the defendant did not have knowledge thereof. These restrictions were vital and were inconsistent with the contract, especially so much thereof as provides that the title to be conveyed was "Clear, Free and Unincumbered, except tax and assessments due and payable after June, 1929." The restrictions were important in many respects. They provided that the grantee would not use the premises for any of the purposes therein described, many of which, while consistent with a purely residential district are inconsistent with the contract made between the parties. These provisions are to the effect that "No part of said premises shall be used for any insane, inebriate or other asylum, or cemetery, or place of burial, or for any structure other than a dwelling, and suitable private garage for the owner and occupants of said dwelling." There is also a provision that "Said premises shall never be leased or sold to Negroes or to any person of African descent." And finally there is this general provision; that "Plans and specifications for all buildings shall be submitted to The Dayton Herald or The Dayton Journal, Subscription Department, for approval." The party owning a lot in this subdivision and desiring to sell the same should use a written contract referring to the building restrictions and not stipulating that the title is clear, free from incumbrance. The holding of the Supreme ourt in the case of **Gebbie v Efros, 95 Oh St, 215** is consistent with the granting of relief in this case.

It is true that case was an action for damages for a breach by the vendor of a contract. The contract was set forth in the petition.

In the contract in that case there were building restrictions which were evidently and clearly for the benefit of other purchasers of the lots in the same subdivision. There was nothing in the petition to which the demurrer was presented which would indicate that the defendant could secure from the other lot owners a release of these building restrictions so as to comply with the contract in that case. The court held that the burden of proof was on the defendant to prove that he could secure such releases and in the absence of any averment to that effect in the petition, the burden would rest upon the defendant to secure such releases. In the case at bar, it appears that other lots had been sold under these building restrictions, and that no effort has been made to secure the release of the lot owners of the building restrictions so as to permit the

defendant to execute the deed in fee simple as provided for in the contract. On the contrary the deed which was presented and is now offered in evidence as the deed demanded of the defendant contained a recital of the standard building restrictions.

In the case of Smith v Dixon, 32 Ohio Law Bulletin, 300 a purchaser whose contract did not provide as in the present case that the title to be conveyed was clear, free and unincumbered, except the taxes due, but who had notice of the building restrictions in that addition, could be compelled to complete his contract of purchase. That is entirely different from the case here because the evidence does not show that the defendant knew of these building restrictions and he had a right to rely upon the express covenant of his contract.

We are clear that the plaintiff has not made out a case for the specific performance of the contract and that the defendant would be entitled to a recovery of the amount paid by him on the contract, towit, $50.00 as incidental relief. Decree accordingly.

KUNKLE, PJ and HORNBECK, J, concur.